<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JACQUELINE WILKINS, *individually, and on behalf of all others similarly situated*, | Civil Action No: 22-2916 (SDW)(ESK) |
| Plaintiff, | **OPINION** |
| v. | |
| NAVY FEDERAL CREDIT UNION, | January 18, 2023 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court are (1) Defendant Navy Federal Credit Union's ("Defendant") Motion to Dismiss, (D.E. 7, "Motion to Dismiss"), (2) Magistrate Judge Edward S. Kiel's ("Magistrate Judge Kiel") Report and Recommendation ("R&R"), dated September 14, 2022, recommending that Plaintiff Jacqueline Wilkins's ("Plaintiff") Motion to Remand (D.E. 16, "Motion to Remand") be granted, (D.E. 40), and (3) Defendant's objections to the R&R, (D.E. 44, "Objection"). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, the R&R of Magistrate Judge Kiel is **REJECTED**, Plaintiff's Motion to Remand is **DENIED**, and Defendant's Motion to Dismiss is **GRANTED** without prejudice.

**I.      BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff, a citizen of New Jersey, maintains a bank account with Defendant. (D.E. 1-1 ¶¶ 13, 74, "Complaint.") Defendant is a national credit union with its principal place of business in Virginia. (*Id.* ¶ 14.) Defendant operates banks and conducts business in the State of New Jersey.

(*Id.*)  Plaintiff brings this action individually and on behalf of two putative classes:  (1) All persons who maintain an account with Defendant and incurred unreimbursed losses due to fraud-induced transactions on Zelle ("Nationwide Class"); and (2) all New Jersey persons who maintain an account with Defendant and incurred unreimbursed losses due to fraud-induced transactions via Zelle ("New Jersey Subclass," and together with the Nationwide Class, "Classes").  (*Id.* ¶ 51.)

## A.  Plaintiff is Defrauded

On or about March 17, 2021, Plaintiff received an automated voicemail from someone purporting to be an agent at her utility company, PSE&G Electric ("PSE&G").  (*Id.* ¶ 46.)  Unbeknownst to Plaintiff, PSE&G did not leave the automated voicemail—a fraudster did.  (*Id.* ¶ 45–49.)  The voicemail explained that Plaintiff's electric bill was overdue and that her service would be disconnected unless she made an immediate payment via Zelle—a payment transfer service offered by 1,500 large banks in the United States, including Defendant.  (*Id.* ¶¶ 2, 17, 21, 46.)  Plaintiff, fearful that her power would be shut off because she indeed had not paid her electric bill for months, promptly transferred via Zelle $998.01 to the account provided in the voicemail.  (*Id.* ¶ 46.)

To ensure receipt of her payment, Plaintiff called the number from which she received the voicemail and spoke with individuals who again falsely identified themselves as agents at PSE&G ("Fraudsters").  (*Id.* ¶ 47.)  The Fraudsters claimed that they had not received any payment from Plaintiff and requested that she send the money again.  (*Id.*)  Because the Fraudsters reassured Plaintiff that she would be refunded any amount paid over her balance, Plaintiff transferred via Zelle another $998.01 to the Fraudsters.  (*Id.*)  Unsurprisingly, the Fraudsters—still misrepresenting themselves as agents of PSE&G—told Plaintiff that her second payment was unsuccessful and requested that she try again.  (*Id.* ¶ 48.)  This time, the Fraudsters suggested that

Plaintiff split the payment into two Zelle transfers—one for $450.29 and the other for $549.71. (*Id.*)  Unfortunately, Plaintiff did so.  (*Id.*)  In total, Plaintiff transferred via Zelle $2,996.02 to the Fraudsters.  (*Id.* ¶ 45.)  The next day, Plaintiff learned from PSE&G's customer service that she had been defrauded.  (*Id.* ¶ 49.)  Plaintiff immediately reported the fraud to Defendant, but Defendant refused to reimburse Plaintiff for the $2,996.02 she sent to the Fraudsters.  (*Id.* ¶ 50.)

### B.  Plaintiff's Allegations

Plaintiff now claims that Defendant has falsely "market[ed] Zelle as a fast, safe, and secure way for consumers to send money," and that Defendant has omitted from its marketing "huge, undisclosed security risks" associated with Zelle.  (*Id.* ¶ 3.)  Specifically, Plaintiff asserts that Defendant has "misrepresent[ed] and omit[ted] a key fact about [Zelle] that is unknown to accountholders:  that there is virtually no recourse for consumers to recoup losses due to fraud" and that Defendant—contrary to its promises—provides no reimbursement "for [its] accountholders attempting to recoup losses due to fraud."  (*Id.* ¶ 4.)  Indeed, Plaintiff contends, Defendant maintains a "secret policy," *i.e.*, "it does not and will not reimburse its accountholders for losses via Zelle due to fraud, even where those losses are timely reported by accountholders."  (*Id.* ¶ 6.)  Plaintiff claims that Defendant, by failing to provide reimbursement for such transactions, has breached its contractual obligation.  (*Id.* ¶ 42.)  Because of Defendant's misrepresentations about Zelle, Plaintiff asserts, "users like Plaintiff sign up for and use the Zelle service without the benefit of accurate information . . . and later end up with huge, unreimbursed losses due to fraud."  (*Id.* ¶ 8.)  Plaintiff maintains that if these "extreme risks" had been disclosed to Plaintiff and members of the Classes, they "never would have signed up for Zelle," and thus never would "have been injured by . . . using the Zelle service.  (*Id.* ¶¶ 8, 11–12.)

### C.  Procedural History

On April 18, 2022, Plaintiff filed this putative class action in the Superior Court of New Jersey ("State Court") on behalf of the Classes.  (*See generally id.*)  The Classes allegedly comprise:

> thousands of similarly situated customers of [Defendant] who have signed up for the Zelle money transfer service and who:  have been the victim of fraud on the Zelle service; who have incurred losses due to that fraud that have not been reimbursed by [Defendant]; and who were entitled by the marketing representations of [Defendant] regarding the Zelle service and by the [Defendant's] contract promises to a full reimbursement of losses caused by fraud on the Zelle service.

(*Id.*)  The Complaint asserts claims under the New Jersey Consumer Fraud Act ("NJCFA") on behalf of only the New Jersey Subclass and for breach of contract on behalf of the Nationwide Class.  (*Id.* ¶¶ 60–83.)  In addition to certain injunctive relief, the Complaint seeks several types of monetary relief:  restitution of all fees that Plaintiff and the Classes paid to Defendant; disgorgement of any ill-gotten gains derived from Defendant's misconduct; actual and/or compensatory damages; punitive and exemplary damages; pre-judgment interest; and reimbursement for all costs and expenses accrued by Plaintiff arising from this action, including attorneys' fees and costs.  (*Id.* at 18.)

On May 18, 2022, Defendant timely removed this action to federal court by invoking subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA").  (D.E. 1, "Notice of Removal.")  In its Notice of Removal, Defendant asserted that the three requirements of CAFA had been met:  (1) there are more than 100 putative class members because, as the Complaint alleges, Plaintiff brought this action on behalf of "thousands" of class members, (*id.* ¶¶ 14–15); (2) there is minimal diversity because Defendant is an entity headquartered in Virginia and Plaintiff is a citizen of New Jersey, (*id.* ¶¶ 16–18); and (3) for several reasons, the amount in controversy exceeds $5,000,000.  (*Id.* ¶¶ 19–22.)

On June 8, 2022, Defendant moved pursuant to Rule 12(b)(6) to dismiss Plaintiff's claims because Plaintiff failed to state any claim under the NJCFA or for breach of contract.  (*See generally* D.E. 7.)  The parties have fully briefed the Motion to Dismiss.

On June 10, 2022, Plaintiff moved to remand this action back to State Court, and the parties timely briefed the Motion to Remand.  (D.E. 16.)  Plaintiff argued, *inter alia*, that Defendant had failed to adequately prove CAFA's $5 million amount-in-controversy requirement.  (D.E. 16-1 at 7–12.)  According to Plaintiff, Defendant presented only "unsupported conjecture that Zelle fraud claims average approximately $3,000 and that there were thousands of such claims."  (*Id.* at 8.)  Defendant contended that Plaintiff—rather than Defendant—had the burden to prove or disprove the amount in controversy, (D.E. 22 at 6–7); that there were no jurisdictional facts in dispute, (*id.* at 7–9); and that the amount-in-controversy requirement had been met based on allegations contained in the Complaint, (*id.* at 9–11).

On September 14, 2022, Magistrate Judge Kiel issued the R&R, in which he recommended that Plaintiff's Motion to Remand be granted because, *inter alia*, Defendant had not met the amount-in-controversy threshold by a preponderance of the evidence.  (*See generally* D.E. 40.) As Magistrate Judge Kiel explained,

> There had been confusion among the district courts within the Third Circuit concerning whether a removing party must demonstrate that the CAFA threshold had been met by a legal certainty, as opposed to a preponderance of the evidence.  *See La Stella v. Aquion, Inc.*, No. 19-10082, 2020 WL 7694009, at *5 (D.N.J. Dec. 28, 2020) (discussing the incorrect perception that the legal certainty test is applied to "post-removal challenges to the amount[-]in[-]controversy").  That confusion has since been resolved, and the legal certainty test has been disavowed.  *See id.* (concluding that "the preponderance of the evidence standard applies whenever a plaintiff disputes jurisdiction"); *Grace v. T.G.I. Fridays, Inc.*, No. 14-07233, 2015 WL 4523639, at *3 n.5, *6 (D.N.J. July 27, 2015) (finding "that the preponderance of the evidence standard should apply in all situations where the amount[-]in[-]controversy is

> challenged after a notice of removal [under CAFA] is filed," and thus a court "need not consider … the more demanding legal certainty test").
>
> Here, defendant attempts to impose the burden on plaintiff. However, "as is true of any removal case, whether under CAFA or 28 U.S.C. §1332(a)," the burden of proof "remains at all times with" the removing party. *La Stella*, 2020 WL 7694009, at *5.

(D.E. 40 at 5) (alterations in original).

On September 28, 2022, Defendant filed its Objection (D.E. 44), which the parties timely briefed. Defendant maintains that the Third Circuit's legal certainty test is binding precedent, and accordingly, Magistrate Judge Kiel erred by not applying it to determine whether the amount-in-controversy requirement had been met, (*id.* at 11–15); that Plaintiff's damages allegation should be treated as typical of all class members for purposes of establishing the amount in controversy, (*id.* at 16–20); and that, even under the preponderance-of-the-evidence standard, Defendant has adequately shown the amount-in-controversy requirement, (*id.* at 15–23).

This Court will first address the R&R to determine whether it has jurisdiction to decide the Motion to Dismiss.

## II.    THE REPORT & RECOMMENDATION OF MAGISTRATE JUDGE KIEL

### A.  Standard of Review

The Federal Magistrates Act, 28 U.S.C. § 636, "authorizes district courts to refer nondispositive and dispositive motions to magistrate judges." *Equal Emp. Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 98 (3d Cir. 2017). Generally, magistrate judges may hear and decide non-dispositive matters but must submit proposed findings of fact and recommendations to the district judge regarding dispositive matters. *See* 28 U.S.C. § 636(b)(1)(A)–(B); Fed. R. Civ. P. 72(a)–(b); L. Civ. Rule 72.1(a)(2). Within fourteen days of being served with a copy of the magistrate judge's order or recommendation, parties may serve

and file objections to such order or recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); L. Civ. Rule 72.1(c)(1)(A).

A district court may modify or set aside a magistrate judge's determination of a non-dispositive motion only where it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); *see also Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992).  Where, as here, a district court reviews a magistrate judge's report and recommendation of a *dispositive* motion review is *de novo*.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); L. Civ. Rule 72.1(c)(2); *see In re U.S. Healthcare*, 159 F.3d 142, 145 (3d Cir. 1998) (holding that a motion to remand is dispositive because "it preclusively determines the important point that there will not be a federal forum available to entertain a particular dispute").

## B.  Discussion

A defendant may remove any civil action to a federal district court having original jurisdiction over the action. 28 U.S.C. § 1441.  "A party asserting federal jurisdiction in a removal case bears the burden of showing 'that the case is properly before the federal court.'"  *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 193 (3rd Cir. 2007)); *see* 28 U.S.C. §§ 1441, 1446, 1447.  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014).  "Thus, the grounds for removal should be made in 'a short [and] plain statement,' just as required of pleadings under Fed. R. Civ. P. 8(a)."  *Grace*, 2015 WL 4523639, at *3 (citing *Dart Cherokee*, 574 U.S. at 87).  The district court may remand the action back to state court if the removal was procedurally defective or subject matter jurisdiction is lacking.  *See* 28 U.S.C. § 1447(c).

Pursuant to CAFA, federal district courts have original jurisdiction over class actions where (1) the matter in controversy (*i.e.*, the aggregated claims of the individual class members) exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) there is minimal diversity (*i.e.*, any member of a class of plaintiffs is a citizen of a state different from any defendant), and (3) the class has at least 100 members.  *See* 28 U.S.C. § 1332; *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013) ("CAFA provides the federal district courts with 'original jurisdiction' to hear a 'class action' if the class has more than 100 members, the parties are minimally diverse, and the 'matter in controversy exceeds the sum or value of $5 [million].'" (citing 28 U.S.C. § 1332)); *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 357 n.1 (3d Cir. 2015).

To "determine whether the matter in controversy" exceeds the $5,000,000 jurisdictional threshold, courts must aggregate "the claims of the individual class members." 28 U.S.C. § 1332(d)(6).  In other words, CAFA instructs "the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the plaintiff's] proposed class and determine whether the resulting sum exceeds $5 million." *Knowles*, 568 U.S. at 592.

As Magistrate Judge Kiel explained in the R&R, "[t]here ha[s] been confusion among the district courts within the Third Circuit" regarding the applicable standard for determining whether the amount-in-controversy threshold has been satisfied.  (D.E. 40 at 5.)  Indeed, the Third Circuit has described three tests for courts to use when evaluating the amount in controversy under CAFA. *See Judon*, 773 F.3d at 503–05 (describing the "distinct tests potentially relevant . . . with regard to removal jurisdiction in a CAFA case"); *Frederico*, 507 F.3d at 194–97 (explaining the "disentangle[ment]" of the tests "by distinguishing them on the grounds of whether the jurisdictional dispute surrounded factual matters").

The first test ("*McNutt* preponderance test") applies to cases in which a party challenges the facts underlying the notice of removal of the party asserting jurisdiction.  *Judon*, 773 F.3d at 503.  If the party challenging removal disputes "in any appropriate manner" the jurisdictional facts underlying the removing party's notice of removal, "the party alleging jurisdiction [must] justify his allegations by a preponderance of the evidence."  *Id.* at 501 (alteration in original) (quoting *McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936)).

The second test ("*Red Cab* legal certainty test") applies in cases "where the jurisdictional facts are not contested and the amount in controversy is 'determined in whole or in part' by applicable law."  *Id.* at 505 (quoting *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 397–98 (3d Cir. 2004)); *see St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 288–89 (1938).  If the *Red Cab* legal certainty test controls, courts "ask whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed."  *Id.* (citing *Samuel-Bassett*, 357 F.3d at 398).  Importantly, the *Red Cab* legal certainty test "'does not require the removing defendant to prove to a legal certainty the plaintiff can recover [the amount in controversy].'"  *Id.* (alteration in original) (quoting *Frederico*, 507 F.3d at 195).  "Instead, under the [*Red Cab* legal certainty test], 'the *challenger* to subject matter jurisdiction [must] prove, to a legal certainty, that the amount in controversy *could not exceed* the statutory threshold.'"  *Id.* (second, third, and fourth alterations in original) (quoting *Frederico*, 507 F.3d at 195).

The third test ("*Morgan* legal certainty test") also uses the phrase "legal certainty" but, crucially, it applies that burden to the *party asserting jurisdiction*.[1]  *Judon*, 773 F.3d at 504 n.8.

---

[1] As the Third Circuit explained, the *Morgan* legal certainty test is "'a substantially different standard'" from the *Red Cab* legal certainty test.  *Id.* (quoting *Frederico*, 507 F.3d at 195).  Indeed, the difference is "crystal clear." *Frederico*, 507 F.3d at 196.  That is,

> *Morgan* applies where the complaint specifically avers that the amount sought is less than the jurisdictional minimum.  There, a defendant seeking removal must prove to a legal certainty that plaintiff can recover the jurisdictional amount.  By

The Third Circuit has explained, "where a plaintiff expressly limits the amount in controversy below the $5,000,000 jurisdictional threshold" to avoid federal-court jurisdiction, a removing "'defendant[] bear[s] the burden to prove to a legal certainty that the complaint exceeds the statutory amount in controversy requirement." *Id.* (quoting *Morgan v. Gay*, 471 F.3d 469, 473, 475 (3d Cir. 2006)).   In sum, the *Morgan* legal certainty test requires the party *asserting* jurisdiction to prove to a legal certainty the amount in controversy is met, *id.*, whereas the *Red Cab* legal certainty test requires the party *challenging* jurisdiction to prove to a legal certainty that it could not recover the amount in controversy, *id.* at 503–04.

As Magistrate Judge Kiel explained in the R&R, "Plaintiff does not dispute that CAFA's diversity and class size requirements are met."   (D.E. 40 at 4.)   Then, as now, Plaintiff only challenged whether the $5 million amount-in-controversy requirement was met.   (*Id.*)   While Magistrate Judge Kiel concluded that the jurisdictional threshold was not exceeded, he declared that "the legal certainty test has been disavowed," and therefore imposed upon Defendant the burden to establish the amount in controversy by a preponderance of the evidence.   (*Id.* at 4–11.)   Because the legal certainty test—specifically, the *Red Cab* legal certainty test—remains good law in the Third Circuit, this Court declines to adopt the R&R.

### 1.   *Judon* and *Frederico* Remain Binding Precedent

In the R&R, Magistrate Judge Kiel based his conclusion that courts have eschewed the legal certainty test on the Supreme Court's decision in *Dart Cherokee Basin Operating Co. v. Owens*, and subsequent interpretations thereof by two district courts within the Third Circuit.   574

---

contrast, [the *Red Cab* legal certainty test] applies where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum.   There, the case must be remanded if it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount."

*Id.* at 196–97 (emphasis in original).

U.S. at 87; *see La Stella*, 2020 WL 7694009, at *5 ("*Dart* clearly 'calls into question the soundness of the reasoning for applying the legal certainty test rather than the preponderance of the evidence test,' as well as *Judon*'s standards for post-removal challenges to the amount in controversy." (quoting *Grace*, 2015 WL 4523639, at *5).   The R&R, however, misinterprets *Dart* and misconstrues this Court's obligation when faced with non-binding dicta by the Supreme Court.

In *Dart*, the Supreme Court did not address the issue now before this Court.  *See Dart*, 574 U.S. at 84.  Rather, the *Dart* Court was faced with the question whether a removing party needed to include evidence of federal jurisdiction in the notice of removal, or if it was sufficient to allege a short a plain statement of the grounds for removal.  *Id.* ("To assert the amount in controversy adequately in the removal notice, does it suffice to allege the requisite amount plausibly, or must the defendant incorporate into the notice of removal evidence supporting the allegation?  That is the single question argued here. . . .").  The Supreme Court held that "[a] statement 'short and plain' need not contain evidentiary submissions."  *Id.*

In reaching its conclusion, the Supreme Court briefly touched on the preponderance-of-the-evidence standard and the legal certainty test.  The Court stated:

> [W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court. . . . [but] if the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: "[R]emoval . . . is proper on the basis of an amount in controversy asserted" by the defendant "if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds" the jurisdictional threshold . . . . This provision . . . clarifies the procedure in order when a defendant's assertion of the amount in controversy is challenged.

*Id.* at 88.  That passing reference, however, did not condemn the legal certainty standard.  Indeed, the Supreme Court's only reference to "legal certainty" lies in a quotation from a House Judiciary

Committee Report.[2]  The language from that report—that "[D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met"—is irrelevant to the present dispute for several reasons.  First, it is unclear whether the Supreme Court, in dicta, intended to adopt the statement in the House Judiciary Committee Report.  Second, even if the Supreme Court embraced the view espoused in the House Judiciary Committee Report, it would call into question only the *Morgan* legal certainty test—and neither Plaintiff nor Defendant has argued that the *Morgan* legal certainty test applies.  *Id.* at 88.  Third, the other statements in *Dart* either reaffirm or at least leave unblemished the *McNutt* preponderance test and the *Red Cab* legal certainty test.  For instance, the *Dart* Court's pronouncement that a "defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff" closely tracks—and certainly does not overrule—the *Red Cab* legal certainty test.  *Id.* at 87.  Likewise, the *Dart* Court's articulation, that the preponderance-of-the-evidence standard applies when a removing defendant's amount-in-controversy allegation is challenged, is identical to the *McNutt* preponderance test.  *Id.* at 88 (explaining that "when a defendant's assertion of the amount in controversy is challenged, . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied").  Accordingly, the *Dart* opinion is consistent with the Third Circuit decisions in *Judon* and *Frederico*.  *Compare Judon*, 773 F.3d at 499, 506–08 (applying the *McNutt* preponderance test

---

[2] The statement from the House Judiciary Committee Report is as follows:

> [D]efendants do not need to prove to a legal certainty that the amount in controversy requirement has been met.  Rather, defendants may simply allege or assert that the jurisdictional threshold has been met.  Discovery may be taken with regard to that question.  In case of a dispute, the district court must make findings of jurisdictional fact to which the preponderance standard applies.

*Id.* at 88–89 (alteration in original) (quoting H.R. Rep. No. 112-10, at 16 (2011)).

when plaintiff challenged defendant's "optimistic estimate of its potential liability—at least for jurisdictional purposes"); *with Frederico*, 507 F.3d at 198 (applying the *Red Cab* legal certainty test where the removing defendant's "argument for jurisdiction is based on allegations made initially by [the plaintiff]").

In any event, this Court remains bound by controlling Third Circuit precedent—*Judon* and *Frederico*—until those cases are squarely overruled by the Third Circuit or the Supreme Court. The Third Circuit has made clear that it "steadfastly appl[ies] the *Agostini* [*v. Felton*] doctrine," which requires lower courts to "obey controlling precedent" and avoid overruling older Supreme Court precedents "by implication." *United States v. Extreme Assocs., Inc.*, 431 F.3d 150, 155 (3d Cir. 2005) (quoting *Agostini v. Felton*, 521 U.S. 203, 237 (1997)). Put differently, "[i]f a precedent of [the Supreme] Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to [the Supreme] Court the prerogative of overruling its own decisions." *Id.* (quoting *Rodriguez de Quijas v. Shearson/Am. Express Inc.* 490 U.S. 477, 484 (1989)). The same principle applies to Third Circuit precedent. *See United States v. Singletary*, 268 F.3d 196, 204 (3d Cir. 2001) (holding that "our prior decision . . . remains the law of this circuit, and we are bound to respect it, absent an en banc consideration." (citations omitted)). Third Circuit precedent that has not been overturned still binds lower courts even where "a lower court's analytical position has merit." *Extreme Assocs., Inc.*, 431 F.3d at 156.

Here, the Third Circuit has clearly not overruled *Judon* or *Frederico*. Indeed, it has continued to apply the *Red Cab* legal certainty test following *Dart*. *See, e.g., Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 n.1 (3d Cir. 2015) ("Because [the challenging party] did not

contest these jurisdictional facts, we ask 'whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed.'" (quoting *Judon*, 773 F.3d at 505)).

The Supreme Court also has not squarely overruled *Judon* and *Frederico*. To be sure, in deciding *Judon* and *Frederico*, the Third Circuit relied on *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283 (1938) and *McNutt v. General Motors Acceptance Corp. of Indiana*, 298 U.S. 178 (1936). In *Dart*, though, the Supreme Court cited *Red Cab* with approval[3] and made no mention of *McNutt*. Surely, then, *Dart*'s dicta—that "when a defendant's assertion of the amount in controversy is challenged . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied"—cannot be construed as overruling *Red Cab* and *McNutt*. *Dart*, 574 U.S. at 87. Neither this Court nor any other court besides the Supreme Court can overrule those decisions by implication. *Extreme Assocs., Inc.*, 431 F.3d at 155. Therefore, *Judon* and *Frederico* control.

### 2. The *Red Cab* Legal Certainty Test Applies

Because Magistrate Judge Kiel erroneously concluded that the *Red Cab* legal certainty test "ha[d] been disavowed," the R&R failed to fully consider the potentially applicable standards to the amount-in-controversy dispute. (D.E. 40 at 5.) That determination is "[a]t the core of this jurisdictional challenge." *Judon*, 773 F.3d at 500 ("At the core of this jurisdictional challenge is

---

[3] The entire passage in *Dart* reads:

> When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith. *See, e.g., Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 276 (1977) ("'[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith.'") (quoting *St. Paul Mercury Indemn. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938); alteration in original). Similarly, when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.

*Dart*, 574 U.S. at 87.

the nature of the burden of proof and evidentiary standards applicable in a case removed under CAFA.").  This Court now holds that the *Red Cab* legal certainty test applies.

The Third Circuit has made clear that "[t]he proper test in a CAFA removal action depends on the nature of the jurisdictional facts alleged and whether they are in dispute." *Id.* at 500.  Courts look to the "allegations in the complaint and a defendant's notice of removal." *Id.* (citing *Frederico*, 507 F.3d at 197).  As outlined above, the *Red Cab* Test applies where, as here, the jurisdictional facts are not contested. *Id.* at 505; *Frederico*, 507 F.3d at 196–97.  In such cases, courts must determine whether "it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Frederico*, 507 F.3d at 197; *Judon*, 773 F.3d at 505.

Here, as in *Frederico*, Defendant's "argument for jurisdiction is based on allegations made initially by [Plaintiff] herself.  Accordingly, the present facts are not expressly in dispute between the parties." *Frederico¸* 507 F.3d at 198; *see also Judon*, 773 F.3d at 502–03 (explaining that *Frederico* "provides an example of undisputed facts in a CAFA removal action").  In other words, because the Notice of Removal "accepts the facts alleged in the Complaint and asserts that they give rise to an amount in controversy over" the jurisdictional threshold, "this action may remain in federal court unless [Plaintiff] can show to a 'legal certainty' that she cannot recover that amount." *Ifill v. CVS Pharmacy*, No. 20-14818, 2021 WL 486884, at *2 (D.N.J. Feb. 9, 2021) (citing *Judon*, 773 F.3d at 502–03).

Plaintiff does not attempt to meet the *Red Cab* legal certainty threshold but instead insists that she has sufficiently challenged Defendant's jurisdictional assertions and, as such, the burden must be on Defendant to prove the amount in controversy by a preponderance of the evidence.[4]

---

[4] As Plaintiff puts it, "[T]o be very clear Plaintiff's motion to remand challenged—and Plaintiff continues to challenge—Defendant's jurisdictional assertion, and as such the Court could not simply rely on unsupported allegations in Defendant's Notice of Removal as to the amount in controversy, even if they were plausible." (DE. 45 at 7.)

(D.E. 45 at 7.)  Specifically, Plaintiff disputes as "conjectural" Defendant's assumptions regarding the average or "typical" damages of the class members, (D.E. 16-1 at 5, 8–9), quibbles about the potential class size, (*id.* at 9–11), and contests the extent to which courts may consider punitive damages and attorneys' fees when determining the amount in controversy, (*id.* at 11–13).  Plaintiff, however, has not challenged *jurisdictional facts*, rather she undermines the facts comprising her own Complaint and challenges the legal effect this Court gives to those facts when evaluating the amount in controversy.  Because the jurisdictional facts are not at issue and the amount in controversy can be "determined in whole or in part by applicable law," the legal certainty test applies.  *Judon*, 773 F.3d at 505 (quoting *Samuel-Bassett*, 357 F.3d at 397–98.

To be sure, the Complaint unequivocally states—and the Notice of Removal asserts—that Plaintiff has experienced losses of $2,996.02, (D.E. 1-1 ¶ 45; D.E. 1 ¶¶ 4, 20); that "Plaintiff's claims are typical of the claims of the other members of the Classes because, among other things, Plaintiff and all Class members [are] similarly injured . . . [and] Plaintiff, like the members of the Classes, w[as] deprived of monies[,]" (D.E. 1-1 ¶ 57; D.E. 1 ¶¶ 20–21); that "[u]nsuspecting Zelle users, tricked into making a fraudulent transfer, in many cases sen[t] hundreds or thousands of dollars to fraudsters," (D.E. 1-1 ¶¶ 26, 45; D.E. 1 ¶ 20–21); that there are "thousands of similarly situated customers of [Navy Federal] who have signed up for the Zelle money transfer service" and who have experienced losses due to fraud, (D.E. 1-1 ¶¶ 1, 26; D.E. 1 ¶¶ 15, 20–21); and that Plaintiff seeks punitive damages and attorneys' fees (D.E. 1-1 ¶¶ 12, 72; D.E. 1 ¶¶ 20–22).

Based on the undisputed allegations in the Complaint and clear Third Circuit precedent, this Court finds:  that Plaintiff's alleged losses of $2,996.02 can be considered "typical of the class" because, in determining the jurisdictional threshold, courts may accept a defendant's assumption

that a plaintiff's damages are "'average actual damages of each member of the putative class,'"[5] *Judon*, 773 F.3d at 507 (citing *Frederico*, 507 F.3d at 197); that 2,000 is indisputably "the smallest number of potential class members consistent with [Plaintiff's] allegations," *id.* at 505; and that punitive and trebled damages and attorneys' fees may be considered when calculating the amount-in-controversy threshold, *id.* at 508 n.12 (explaining that treble and punitive damages may be considered in determining the jurisdictional threshold); *see also Verma v. 3001 Castor, Inc.*, 937 F.3d 221, 227 (3d Cir. 2019) (holding "attorneys' fees . . . do count for CAFA's amount-in-controversy threshold").

Therefore, "*Red Cab*'s legal certainty test [applies] to the facts alleged by [Plaintiff] in her complaint and incorporated by [Defendant] into its Notice of Removal." *Frederico*, 507 F.3d at 198.

### 3. Defendant Has Established the Amount in Controversy Under Either Test

The foregoing facts and the applicable law show that the *Red Cab* legal certainty test applies, and therefore, this Court must decide "whether it is clear to a legal certainty that the plaintiff cannot recover the amount claimed." *Judon*, 773 F.3d at 504.  Under that standard, the amount-in-controversy threshold has been met.  In any event, even if the *McNutt* preponderance test applies, this Court is satisfied that Defendant has shown by a preponderance of the evidence that the jurisdictional threshold has been met.

### a. *Red Cab* Legal Certainty Test

---

[5] Plaintiff argues that, "unlike here, the potential damages in *Frederico* were subject to multiple objective and quantifiable parameters that helped narrow the margin of assumptions and conjecture used to calculate damages such as 'typical rental rate, late fees, 6% sales tax, and the domestic security charge of $2.00." (D.E. 45 at 12.) Plaintiff's argument is directly counter to the Third Circuit's statement in *Judon* that "[i]t is, therefore, not unreasonable to assume that Judon, as the proposed class representative, has damages that are typical of the class." *Judon*, 773 F.3d at 507 (citing *Frederico*, 507 F.3d at 197).

Under the *Red Cab* legal certainty test, courts will find the amount-in-controversy requirement is satisfied unless "it appears to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Frederico*, 507 F.3d.at 197; *Judon*, 773 F.3d at 505.  Applying the *Red Cab* legal certainty test here, this Court "cannot say to a legal certainty that [Plaintiff] could not recover over" the jurisdictional amount.  *Ifill*, 2021 WL 486884, at *2 (citing *Judon*, 773 F.3d at 502–03).  To calculate the amount in controversy, "courts must aggregate 'the claims of the individual class members.'"  *Farrell v. FedEx Ground Package Sys., Inc.*, 478 F. Supp. 3d 536, 540 (D.N.J. 2020) (quoting 28 U.S.C. § 1332(d)(6)).  "In other words, . . . 'the [d]istrict [c]ourt [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million."  *Id.* (fifth alteration in original) (quoting *Knowles*, 568 U.S. at 591).

Plaintiff is seeking $2,996.02 in compensatory damages.  (D.E. 1-1 ¶ 45.)  She is pursuing claims on behalf of a class and, "as the proposed class representative, has damages that are typical of the class."  *Judon*, 773 F.3d at 507 (citing *Frederico*, 507 F.3d at 197).  Accepting here, as the Third Circuit did in *Frederico*, the assumption that "Plaintiff's [alleged compensatory damages] represents the average actual damages of each member of the putative class," Plaintiff need only represent 1,669 class members to meet the $5 million jurisdictional threshold.  *Frederico*, 507 F.3d at 197–99; *see also Judon*, 773 F.3d at 507 (explaining and approving the approach in *Frederico*).  Indeed, Plaintiff's minimum alleged class size is 2,000, which, when multiplied by the $2,996.02 alleged loss typical of each member of the Nationwide Class, results in $5,992,040.  This Court is satisfied that Plaintiff *could* recover in excess of $ 5 million.[6]  Because Plaintiff has not contested the diversity and numerosity requirements of CAFA and has not proven to a legal certainty that

---

[6] This calculation need not account for treble damages or reasonable attorneys' fees to which Plaintiff is undoubtedly entitled if she prevails on her NJCFA claim.

she could not recover more than $5 million, this Court has jurisdiction.  Therefore, Plaintiff's Motion to Remand will be denied.

**b.  *McNutt* Preponderance Test**

Even if this Court were to apply the *McNutt* preponderance test, Defendant has met that burden.  Under the *McNutt* preponderance test, "the party alleging jurisdiction [must] justify his allegations by a preponderance of the evidence."  *McNutt*, 298 U.S. at 189.  The party alleging jurisdiction may "properly rely on an estimate of [all the] class members," *Judon*, 773 F.3d at 507 (citing *Samuel-Bassett*, 357 F.3d at 403), but the "estimate of the amount recoverable should be 'objective and not based on fanciful, "pie-in-the-sky" or simply wishful amounts,'" [7] *id.* (quoting *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002)).

Here, accompanying its Objection, Defendant has offered further evidence—the Declaration of Jennifer Hall, (*see generally* D.E. 44-1, "Declaration")—which Defendant believes satisfies the amount-in-controversy requirement by a preponderance of the evidence.  (D.E. 44 at 21–22.)  In the Declaration, Jennifer Hall, a manager at Defendant's Card Fraud Prevention department, explains that "from July 1, 2021, to July 31, 2022," [8] [Defendant's] members nationwide had submitted claims for transfers made through Zelle that were not reimbursed for a

---

[7] In *Judon*, the Third Circuit suggested that a defendant could overcome the preponderance-of-the-evidence standard by employing an "assumption . . . grounded on some reasonable inference that can be drawn from fact."  *Judon*, 773 F.3d at 507.  As an "example" of such an assumption, the Third Circuit pointed to *Frederico*.  *Id.* at 508 ("By way of example, in *Frederico*, we relied on the named plaintiff's actual injuries as the 'average actual damages of each member of the putative class' to determine whether the CAFA amount-in-controversy requirement was satisfied." (citing *Frederico*, 507 F.3d at 198–99)).  Here, even prior to submitting the Declaration, Defendant may have offered such an appropriate assumption—that Plaintiff's compensatory damages are typical or average for the class members.  This Court need not decide that matter, however, because Defendant has satisfied the *McNutt* preponderance test on other grounds.

[8] According to Defendant, the "data [from July 1, 2021 to July 31, 2022] was readily available because the information was tracked consistent with guidance . . . from the Consumer Financial Protection Bureau issued" in June 2021.  (D.E. 44 at 21 n.5.)  Presumably, this information was not available while the parties briefed the Motion to Remand before Judge Kiel in June 2022.

total of $3,441,186.36."  (D.E. 44-1 ¶ 6.)  Defendant therefore proffers $3.4 million as the annual average damages for the Nationwide Class.  (D.E. 44 at 21–22.)

Defendant asserts, then, to establish the jurisdictional threshold, $3.4 million should be multiplied by the number of years for which the Nationwide Class may recover damages.  *Id.*  Here, each of the Plaintiff's claims is subject to a multi-year statute of limitations.  VA. CODE § 59.1-508(a) ("[A]n action for breach of contract must be commenced within the later of four years after the right of action accrues or one year after the breach was or should have been discovered."); N.J. STAT. ANN. § 2A:14-1 (six-year statute of limitation).   Defendant argues that by straightforward math—$3.4 million multiplied by the four-year statute of limitations applicable to the Nationwide Class—the amount in controversy far exceeds $5 million.  (D.E. 44 at 21.)  That result does not even account for punitive damages, trebled damages, attorneys' fees, or the claims on behalf of the New Jersey Subclass.

Plaintiff, in turn, contests the admissibility and logic of Defendant's proffer.  (D.E. 45 at 13–16.)  First, Plaintiff argues the Declaration is new evidence that was not presented to Magistrate Judge Kiel and now should not be considered by this Court.  (*Id.* at 13–15.)  Second, Plaintiff contends that the Declaration "does not establish that [$3.4 million] was entirely attributable to fraud claims as alleged in the Complaint, nor does it establish what portion of those amounts related to members located in New Jersey."  (*Id.* at 16.)  Plaintiff's arguments miss the mark.

As an initial matter, this Court plainly has discretion to consider "further evidence" that was not presented to Magistrate Judge Kiel.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); L. Civ. R. 72.1(c)(2); *see also Cataldo v. Moses*, 361 F. Supp. 2d 420, at 426 (D.N.J. 2004) ("*De novo* review . . . [allows] the court, at its discretion, [to] rely on the record developed by the magistrate judge, or it may . . . receive further evidence." (citing L. Civ. R. 72.1(c)(2))).  The out-

of-circuit cases cited by Plaintiff are of no matter—they are not binding on this Court and, in any event, do not support Plaintiff's contentions.  (D.E. 45 at 14–15.)  Therefore, this Court will consider the Declaration as additional evidence of the amount in controversy.

Plaintiff argues that the Declaration neither establishes the precise amounts attributable to fraudulent-transfer claims by Defendant's customers nor the New Jersey Subclass's claims.  (*Id.* at 15–16.)  The burden on Defendant is not so exacting.  Under the *McNutt* Test, Defendant need only show the amount-in-controversy requirement has been met *by a preponderance of the evidence*—not exactly, precisely, or to a legal certainty.  *See Judon*, 773 F.3d at 503.  Moreover, because the Court is satisfied that Defendant's Declaration has sufficiently established that the amount in controversy exceeds $5 million based on solely the Nationwide Class's potential for compensatory damages—that is, without factoring in punitive damages, trebled damages, attorneys' fees, or the New Jersey Subclass's claim—Defendant need not proffer evidence of the New Jersey Subclass's damages.  *See, e.g., Portillo v. Nat'l Freight, Inc.*, 169 F. Supp. 3d 585, 597 (D.N.J. 2016) (holding that a defendant's supplemental declaration clearly proved the jurisdictional threshold when it showed records of a portion of the class "and determined that their claimed damages alone" exceeded $5 million).  To be sure, the members of the New Jersey Subclass are, by definition, members of the Nationwide Class.  (D.E. 1-1 ¶ 51.)  Since the Classes' claims arise out of "a common nucleus of operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966), this Court has supplemental jurisdiction to hear their state law claims.  *See, e.g., Sirin v. Portx, Inc.* No. 20-7853, 2020 WL 6194018, at *3 (D.N.J. Oct. 22, 2020); *see also* 28 U.S.C. § 1367.  This Court is satisfied that Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $5 million.

Under either the *Red Cab* legal certainty test or the *McNutt* preponderance test, the amount-in-controversy requirement has been met, and Plaintiff's Motion to Remand will be denied. Therefore, this Court has jurisdiction to decide Defendant's Motion to Dismiss.

## III.    THE MOTION TO DISMISS

### A.  Standard of Review

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (confirming that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").  In other words, Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In addition, a plaintiff alleging fraud by a defendant must meet the "stringent pleading restrictions of Rule 9(b)" by pleading "the circumstances constituting fraud or mistake . . . with particularity."  *Frederico*, 507 F.3d at 200 (quoting Fed. R. Civ. P. 9(b)).  To satisfy the heightened pleading standard, "a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'"  *Id.* (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223–24 (3d Cir. 2004)).

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."

*Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir.

2002)).  However, "the tenet that a court must accept as true all of the allegations contained in a

complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing

*Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir.

2009) (discussing the *Iqbal* standard).  "[A] complaint must contain sufficient factual matter,

accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555).  Determining whether the allegations in a complaint are

"plausible" is "a context-specific task that requires the reviewing court to draw on its judicial

experience and common sense." *Id.* at 679.  If "the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct," the complaint should be dismissed for failing

to "show[] . . . that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## B.  Choice of Law

Before turning to the Motion to Dismiss, this Court must address the parties' contentions

regarding which states' laws apply to the underlying claims.  Defendant argues that the choice-of-

law provision in the Deposit Agreement[9] dictates Virginia law governs the present dispute.[10]

---

[9] In her Complaint, Plaintiff quoted verbatim Defendant's policy regarding customers' liability for unauthorized electronic funds transfers.  (D.E. 1-1 ¶ 42.)  Plaintiff, however, did not attach the relevant policy.  Defendant, in its Motion to Dismiss, appended the policies specifically quoted by Plaintiff:  the Mobile Banking, Online Banking, and Bill Pay Terms and Conditions, (D.E. 7-2, "Terms and Conditions"), and Defendant's Important Disclosures (D.E. 7-4, "Important Disclosures," and together with the Terms and Conditions, "Deposit Agreement.")  Because Plaintiff specifically refers to each policy, this Court will accept for purposes of this Motion to Dismiss Defendant's submissions and will refer to such submissions as the Deposit Agreement.  *See Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("[A] 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.'" (quoting *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)).

[10] The Terms and Conditions and Important Disclosures each contain choice-of-law provisions.  *See, e.g.* D.E. 7-2 at 8 ("This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Virginia. . . ."); D.E. 7-4 at 7 ("Navy Federal accounts are maintained and governed in accordance with federal law and the laws of the Commonwealth of Virginia, as amended.").

Plaintiff agrees that Virginia law applies to her contractual claims but contends that the choice-of-law provision extends no further.  Instead, Plaintiff contends that New Jersey law—and therefore the New Jersey consumer fraud statute—applies to her consumer fraud claims.

"It is axiomatic that a district court must apply the choice of law rules of the forum in which it sits." *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 293 (D.N.J. 2009) (citing *Klaxon v. Stentor Elec. Mfg., Co.*, 313 U.S. 487, 496 (1941)).  That rule applies "***even where the contract contains a choice-of-law clause***." *CDK Glob., LLC v. Tulley Auto. Grp., Inc.*, 489 F. Supp. 3d 282, 300 (D.N.J. 2020) (emphasis in original) (citing *Zydus Worldwide DMCC v. Teva APIInc.*, 461 F. Supp. 3d 119, 131–32 (D.N.J. 2020)).  In New Jersey, courts generally honor choice-of-law clauses not violative of New Jersey public policy.  *See CDK Glob., LLC*, 489 F. Supp. 3d at 300; *Portillo v. Nat'l Freight, Inc.*, 323 F. Supp. 3d 646, 651 (citing *Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)).  Although "[a] narrowly drawn choice-of-law clause may legitimately be confined to matters of contract interpretation and breach . . . even a facially contractual choice-of-law clause may extend to claims in tort." *CDK Glob., LLC*, 489 F. Supp. 3d at 301–02 (collecting cases that discuss the scope of choice-of-law clauses).  Once a court determines the scope of a choice-of-law provision, it must apply Section 187 of the Restatement (Second) of Conflicts of Laws, which states in relevant part:

> [T]he law of the state chosen by the parties will apply, unless . . . (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which would be the state of the applicable law in the absence of an effective choice of law by the parties.

*Id.* at 300–02 (quoting Restatement (Second) of Conflicts of Laws § 187).  Courts conduct choice-of-law analyses "on an issue-by-issue basis." *Harper v. LG Elecs. USA, Inc.*, 595 F. Supp. 2d 486, 490 (D.N.J. 2009) (citing *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007)); *see*

*also Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006) (explaining that the choice of law analysis is "issue-specific").  This Court, then, will address such choice-of-law questions as they arise in its analysis of Defendant's arguments for dismissal.

### C.  Discussion

Defendant raises the following arguments in support of its Motion to Dismiss:  (1) the NJCFA does not apply to Plaintiff's claims because Virginia law governs this dispute, and the Virginia consumer fraud statute exempts Defendant; (2) Plaintiff has failed to meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b); (3) Plaintiff has failed to adequately plead that Defendant engaged in unlawful conduct under the NJCFA; (4) Plaintiff fails to plead a breach of contract because she does not allege that Defendant had an enforceable obligation to investigate and reimburse her for fraudulent transactions; and (5) Plaintiff fails to plead a breach of the covenant of good faith and fair dealing because an implied covenant cannot create duties beyond—and counter to—the obligations expressly enumerated in an enforceable contract.  For the reasons set forth below, Defendant's Motion to Dismiss is granted.

### 1.  Count 1:  Consumer Fraud[11]

Plaintiff asserts, individually and on behalf of the New Jersey Subclass, that Defendant's practices with respect to Zelle violated the NJCFA.  N.J. STAT. ANN. § 56:8-2.  Specifically, the

---

[11] As discussed, the parties dispute which states' consumer fraud laws apply to the present dispute—New Jersey's NJCFA or Virginia's Consumer Protection Act ("VCPA").  Here, however, this Court need not decide whether the VCPA or the NJCFA applies, because Plaintiff's consumer fraud claims fail under either regime.  As an initial matter, Plaintiff has not—and indeed cannot—state a claim under the VCPA because "[b]anks, savings institutions, [and] credit unions," are specifically exempted therefrom.  VA. CODE §§ 59.1-199; *see, e.g., McLean v. BB&T Bank Corp.*, No. 19-1413, 2020 WL 2744107, at * (E.D. Va. Jan. 13, 2020) (dismissing VCPA claim "because banks are excluded from the [VCPA]"); *Norman v. Wells Fargo Bank, N.A.*, No. 17-585, 2018 WL 1037048, at *5 (E.D. Va. Feb. 23, 2018) ("Institutions such as Defendant are specifically excluded from liability under the VCPA.").  Under the NJCFA, Plaintiff's claims fare no better.

Complaint alleges that Defendant's statements about Zelle—that it is "safe" and "secure"—were false or misleading; that Defendant knew about and intentionally concealed risks associated with Zelle; and that Defendant maintained a secret policy, which allegedly states, in sum and substance, that Defendant will never reimburse its customers who use Zelle for losses incurred because of fraud.  (D.E. 1-1 ¶¶ 31–43.)

The NJCFA permits plaintiffs to bring an action for "any ascertainable loss of money[] . . . as a result of the use or employment by another person of any method, act, or practice declared unlawful under this act."  N.J. STAT. ANN. § 56:8-19.  To state a claim under the NJCFA, a plaintiff must plead "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  *D'Ogostino v. Maldonado*, 78 A.3d 527, 536–37 (N.J. 2013) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)); *see also Frederico*, 507 F.3d at 202 (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462–65 (N.J. 1994)).  The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deceptive, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise.

N.J. STAT. ANN. § 56:8-2.  "Unlawful practices fall into three general categories:  affirmative acts, knowing omissions, and regulation violations."  *Frederico*, 507 F.3d at 202 (quoting *Cox*, 647 A.2d at 462).  Here, Plaintiff alleges affirmative acts—that Defendant misrepresented information about the safety and security of Zelle—and intentional omissions—that Defendant intentionally omitted or failed to inform Plaintiff about the risks associated with Zelle, and concealed

information about its secret policy regarding reimbursement for fraudulent transactions.  (D.E. 1-1 ¶¶ 31–43.)  Plaintiff's allegations fall short for several reasons.

**First**, Plaintiff has not adequately alleged that the NJCFA applies to the conduct at issue here.  As the statutory text indicates, an unlawful practice entails an "act . . . *in connection with the sale or advertisement of any merchandise*.  N.J. STAT. ANN. § 56:8-2 (emphasis added).  The facts in the Complaint, however, expressly state that "[i]t is free to sign up with Zelle."  (D.E. 1-1 ¶ 17.)  Because Plaintiff has not alleged a sale or advertisement of any merchandise,[12] Defendant's conduct does not fall within the reach of the NJCFA.  *See, e.g., Slimm v. Bank of Am. Corp.*, No. 12-5846, 2013 WL 1867035, at *14 (D.N.J. May 2, 2013) (holding that "false and unlawful deceptive practice 'in connection with mortgage modifications' . . . falls outside the ambit of the NJCFA").  Plaintiff argues summarily in her opposition, but does not assert in her Complaint, that Zelle is integrally related to customers' checking accounts, and thus, Defendant benefits "directly or indirectly" by offering Zelle to its customers.  (D.E. 31 at 25.)  However, it is well established that Plaintiff cannot amend her Complaint in her brief in opposition to a motion to dismiss.  *See Coda v. Constellation Energy Power Choice, LLC*, 409 F. Supp. 3d 296, 302 n.4 (D.N.J. 2019) ("Plaintiff cannot amend the [complaint] through a brief." (citing *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)).

**Second**, even if a free service falls within the scope of NJCFA, Plaintiff has not adequately pled her claim under the heightened pleading standard of Rule 9(b).  Fed. R. Civ. P. 9(b).  A plaintiff alleging fraud by a defendant must meet the "stringent pleading restrictions of Rule 9(b)."

---

[12] The NJCFA expressly defines "sale" as "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute," and "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."  N.J. STAT. ANN. § 56:8-1(c)(e).  Under either definition, Plaintiff was required to plead a "sale."

*Frederico*, 507 F.3d at 200.  "It is well-established that NJCFA claims must meet the heightened pleading requirements of [Rule] 9(b)."  *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 534 (D.N.J. 2011) (citing *Frederico*, 507 F.3d at 200)).  To satisfy this stringent standard, the plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'"  *Frederico*, 507 F.3d at 200 (citing *Lum*, 361 F.3d at 223–24).  In other words, "the plaintiff must plead or allege the date, time[,] and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Id.* (citing *Lum*, 361 F.3d at 224); *see also Crozier v. Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) ("A plaintiff must allege the 'who, what, when, where, and how' of the claim." (quoting *Lum*, 361 F.3d at 224)).

Here, as in *Frederico*, Plaintiff has not done so.  507 F.3d at 200.  The Complaint is littered with "generic references to" Defendant's alleged marketing, its alleged statements made during the Zelle registration process, and its secret policy.  *Id.*  For example, the Complaint states: "[Defendant] prominently touts Zelle to its accountholders as a secure, free and convenient wa[y] to make money transfers," (D.E. 1-1 ¶ 4); "[i]n marketing and within the website and app itself, [Defendant] encourages its accountholders to sign up for the Zelle service," (*id.* ¶ 17); "[i]n its marketing about Zelle and during the Zelle signup process within the Bank's mobile app or website, the Bank makes repeated promises that Zelle is a 'fast, safe and easy way to send and receive money,'" (*id.* ¶ 31); and "[t]he Bank's marketing representations about Zelle—including within its app and website—misrepresent and never disclose these risks and material facts," (*id.* ¶ 36).  Plaintiff has not sufficiently identified, as she must, the circumstances surrounding Defendant's allegedly fraudulent marketing.  *See Lieberson*, 865 F. Supp. 2d at 539 (explaining

that the plaintiff did not meet Rule 9(b)'s pleading standard because the complaint did not identify "whether these statements were made in a television commercial, print advertisement, on a website or elsewhere" and did not allege "when these statements were made or whether and when Plaintiff actually viewed them").   Indeed, Plaintiff has alleged few, if any, facts regarding her own registration for Zelle.  While the Complaint generally asserts that Defendant's statements about safety and security were made "within its app and website," (D.E. 1-1 ¶ 36), it is unclear when or whether Plaintiff viewed such statements.  In fact, Plaintiff has neither alleged that she read the statements prior to signing up for Zelle nor that any of the alleged statements caused her to register for Zelle.  *See Lieberson*, 865 F. Supp. 2d at 539 ("Plaintiff has nowhere alleged whether or when the advertisements quoted in the Complaint appeared . . . nor has she alleged whether or when she viewed these advertisements."); *see also Semeran v. Blackberry Corp.*, No. 15-750, 2016 WL 406339, at *4 (D.N.J. Feb. 2, 2016) (dismissing NJCFA claims because, *inter alia*, the plaintiff had "not allege[d] that he read any of the specific statements prior to his purchase . . . or that any of the[] statements caused him" to make the purchase).  More troublingly, Plaintiff has not alleged any facts regarding the specific statements to which she was exposed. *See In re Riddell Concussion Reduction Litigation*, 77 F. Supp. 3d 422, 433–34 (D.N.J. 2015) ("Plaintiffs' scatter-shot pleading lists examples of Defendants' marketing statements without identifying which specific statement(s), if any, Plaintiff were exposed to.").  "[O]ther than putting quotations around the alleged statements themselves, Plaintiff has provided absolutely no details concerning their origins and identity." *Id.*  Such bare allegations do not provide the requisite level of precision under Rule 9(b).

Likewise, without providing any specific information, Plaintiff argues that Defendant has intentionally concealed a "secret policy" and certain risks associated with Zelle.  (D.E. 1-1 ¶¶ 6,

39–41, 65.)  Once again, Plaintiff's allegations fall far short of Rule 9(b)'s requirements.  Where, as here, a plaintiff alleges concealed or undisclosed facts within the exclusive control of a defendant, courts will relax the stringent pleading requirements of Rule 9(b).  *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992) ("[C]ourts have relaxed the [particularity] rule when factual information is peculiarly within the defendant's knowledge or control." (second alteration in original) (citing *Craftmatic Secs. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989))); *see also In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 427 (D.N.J. 2005) ("If plaintiffs can show that the requisite factual information is 'peculiarly within the defendant's knowledge or control,' the strict requirements of Rule 9(b) may be relaxed." (citations omitted)).  "A boilerplate allegation that the information 'lies within defendants' exclusive control' will not suffice: plaintiffs must accompany such an allegation with a statement of facts upon which the assertion is based."  *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d at 427 (quoting *Shapiro*, 964 F.2d at 285).  Further, the plaintiff must set forth "at least the nature and scope of plaintiff['s] effort to obtain, before filing the complaint, the information needed to plead with particularity."  *Shapiro*, 964 F.2d at 285.

Here, Plaintiff alleges that Defendant maintained a "secret policy" under which "it refuse[d] to reimburse fraud losses incurred via Zelle, even where its accountholders timely inform[ed Defendant] of the fraud," (D.E. 1-1 ¶ 40); that her complaint "plainly alleges that [Defendant] . . . omitted certain truths about [Zelle]," (D.E. 31 at 26); and that "[Defendant] possessed exclusive knowledge of the dangers and risks posed by [Zelle]."  (D.E. 31 at 19).  Plaintiff has not adequately alleged *in her Complaint* that the information was in Defendant's exclusive control, and therefore, she is not entitled to more lenient pleading requirements.  *Shapiro*, 964 F.2d at 285.  Moreover, even if Plaintiff's allegations were analyzed under the more relaxed

pleading standard, she still was required to—and did not—assert the "nature and scope of" her efforts to obtain information regarding the secret policy or any other information exclusively in the possession of Defendant.  *Id.*  Plaintiff has not pleaded with sufficient precision her claims under Rule 9(b), and for that reason alone, her NJCFA claim must be dismissed.

**Third**, Plaintiff has failed to adequately plead under Rule 12(b)(6) the elements of her NJCFA claim.  As discussed earlier in this Opinion, the elements of an NJCFA claim are "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss."  *D'Ogostino*, 78 A.3d at 536–37 (quoting *Bosland*, 964 A.2d at 749); *see also Frederico*, 507 F.3d at 202 (citing *Cox*, 647 A.2d at 462–65).  "There are three categories of unlawful conduct under the NJCFA:  '(1) affirmative acts, *i.e.*, misrepresentations; (2) omissions; and (3) regulatory violations.'" *Semeran*, 2016 WL 406339, at *4 (citations omitted); *see Frederico*, 507 F.3d at 202 (quoting *Cox*, 647 A.2d at 462).  Different burdens of proof apply to each type of unlawful conduct.  To allege "an affirmative act, intent is not an essential element[,] and the plaintiff need not prove that the defendant intended to commit an unlawful act."  *Cox*, 647 A.2d at 462 (citing *Chattin v. Cape May Greene, Inc.*, 591 A.2d 943, 944 (N.J. 1991) (Stein, J., concurring)).  If, however, a plaintiff alleges "an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud."  *Id.* (emphasis in original).

Here, Plaintiff has failed to allege any unlawful conduct by Defendant and, therefore, her NJCFA claim must be dismissed.  At the outset, Plaintiff argues that Defendant engaged in unlawful conduct when it marketed Zelle as "safe" and "secure."  The alleged statements on which Plaintiff allegedly relies, however, are not actionable under NJCFA.  "The NJCFA distinguishes between actionable misrepresentations of fact and 'puffery.'"  *Lieberson*, 865 F. Supp. 2d at 540

(citing *In re Toshiba America HD DVD Marketing and Sales Practices Litig.*, No. 08-939, 2009 WL 2940081, at *9 (D.N.J. Sept. 11, 2009)).  "Advertising that amounts to 'mere' puffery is not actionable because no reasonable consumer relies on puffery.  The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." *Id.* (citing *In re Toshiba*, 2009 WL 2940081, at *10).  Put differently, statements are considered puffery if "[t]hey are neither measurable nor concrete, and are simply too imprecise to be considered material." *Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 608–09 (citing *Tatum v. Chrysler Grp. LLC*, No. 10-4269, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011)).  Courts within this district have routinely held statements related to safety to be non-actionable puffery.[13] *See, e.g., Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011 WL 6887721, at *4 (D.N.J. Dec. 29, 2011) (holding statements related to "reliability, durability, and safety" to be non-actionable puffery); *Tatum*, 2011 WL 1253847, at *1, *4 ("The Court therefore holds that Defendant's advertising [of safety, durability, and reliability] amounts to non-actionable puffery.").  Here, too, Defendant's alleged statement of safety and security was not concrete or measurable—rather, it was a general statement of Defendant's subjective belief and thus constitutes puffery.  Therefore, Plaintiff has not adequately pled an actionable misrepresentation under the NJCFA.

Relatedly, besides conclusory assertions, Plaintiff has not alleged that Defendant's statements were false.  Plaintiff alleges that, because a third party—wholly unrelated to Defendant—fraudulently induced her into sending money via the Zelle platform, Defendant

---

[13] Decisions by other district courts within this circuit are instructive too.  For instance, in *Fusco v. Uber Technologies*, Judge Goldberg thoroughly compared actionable and non-actionable statements related to safety.  No. 17-36, 2018 WL 3618232, at *6–*9 (E.D. Pa. July 27, 2018).  As Judge Goldberg explained, "a claim of absolute safety can be proved true or false" and, therefore, it is actionable.  *Id.* at *6.  That, though, "is in contrast to a claim that a product is 'safe' generally, which is puffery because it conveys only the seller's judgment that the risk is low enough to be called 'safe.'"  *Id.* (citing *Allen v. FCA US LLC*, No. 17-7, 2017 WL 1957068, at *3 (W.D. Va. May 10, 2017)).

misrepresented the safety and security of Zelle.  Plaintiff's interpretation of the alleged statements is unreasonable.  According to the Complaint, Defendant marketed Zelle as a "fast, safe and easy way to send and receive money" and a means to "[m]ove money in the moment.  It's simple and secure—with lots of people you know." (D.E. 1-1 ¶¶ 31–32.)  As alleged, the phrase indicates that the money transfer service, Zelle, is a safe and secure application for sending money; it does not suggest absolute safety.  Moreover, here, Plaintiff's allegations suggest that Zelle worked exactly as advertised:  she transferred money quickly, safely, and securely from her bank account maintained with Defendant, unfortunately, to the Fraudsters.  (D.E. 1-1 ¶¶ 44–49.)  Besides alleging that she was defrauded by third parties who misrepresented their identity, Plaintiff has not alleged any facts to suggest that the integrity of Zelle's money transfer process, itself, was unsafe or insecure.

Plaintiff's assertions of unlawful omission under NJCFA also fail.  As discussed earlier in this Opinion, "when the alleged consumer-fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent is an essential element of the fraud." *Cox*, 647 A.2d at 462.  Plaintiff has not raised any plausible inference to show that Defendant knowingly concealed either the risks of Zelle or a secret policy.[14]  Plaintiff has offered mere conclusory allegations and an unspecific *New York Times* article—which postdates Plaintiff's transactions by a year—to plead Defendant's knowledge.  Specifically, Plaintiff alleges that "[Defendant] alone was aware of and actively misrepresented" "the risks of the Zelle service," (D.E. ¶ 11), and that the *New York Times* reported in 2022 that "[unspecified] banks are aware of the widespread fraud

---

[14] Plaintiff has alleged neither a motive nor a benefit for Defendant to misrepresent the safety and security of Zelle.  In fact, according to the Complaint, Defendant offered Zelle for free.  (D.E. 1-1 ¶ 17.)

on Zelle," (*id.* ¶ 10).  Such bare and irrelevant assertions, without more, do not suffice to establish an intentional omission.

For the foregoing reasons, Plaintiff's NJCFA claims must be dismissed.

### 2.  Count 2:  Contractual Claims

Plaintiff asserts, individually and on behalf of the Nationwide Class, that Defendant breached the Deposit Agreement by failing to fairly investigate reports of fraudulent transactions on Zelle and failing to reimburse accountholders for losses due to such fraud-induced transactions. (D.E. 1-1 ¶ 75.)  Plaintiff further alleges that Defendant breached its duty of good faith and fair dealing—a duty implied in every contract—by "abus[ing] self-granted contractual powers."  (*Id.* ¶¶ 76–81.)

The parties agree that pursuant to the choice-of-law provision in the Deposit Agreement, Virginia law governs Plaintiff's contractual claims.  (D.E. 31 at 11 n.5.)  "In diversity cases such as this one, [courts] look to the choice-of law rules of the forum state—the state in which the District Court sits—in order to decide which body of substantive law to apply to a contract provision, even where the contract contains a choice-of-law clause."  *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183 (3d Cir. 2017).  New Jersey courts typically "uphold the contractual choice" of the parties; however, "parties' freedom to choose the law applicable to their agreements is not without boundaries."  *Id.* at 183–84.  "New Jersey looks to Restatement § 187 to determine under what circumstances a choice-of-law clause will *not* be respected."  *Id.* at 184 (emphasis in original) (citing *Instructional Sys., Inc.*, 614 A.2d at 133).  Restatement § 187 explains that a contractual choice-of-law provision will be followed "unless (a) the chosen state has no substantial relationship to the parties or the transaction, . . . or (b) application of the law of the chosen state

34

would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state."  Restatement (Second) of Conflicts of Laws § 187.

Here, neither party suggests that the exceptions outlined in Restatement § 187 apply.  For purposes of resolving this Motion to Dismiss, this Court will follow the choice-of-law provision and apply Virginia law to Plaintiff's contractual claims.[15]

To state a claim for breach of contract, a plaintiff must allege "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  *Vlaming v. W. Point Sch. Bd.*, 10 F.4th 300, 307 (4th Cir. 2021) (quoting *Filak v. George*, 267 594 S.E.2d 610, 614 (Va. 2004)).  Plaintiff has failed to adequately plead the first two elements, and therefore, her claim for breach of contract must fail.

Plaintiff alleges that Defendant did not "fairly investigat[e] reported fraudulent transactions on the Zelle money transfer service," and (2) did not "reimburse accountholders for fraud-induced losses incurred using the Zelle service."  (D.E. 1-1 ¶ 75.)  But the Complaint fails to allege that Defendant had an obligation to do either.  Indeed, the Complaint cites a clause in the Deposit

---

[15] Several courts within this district have declined to decide the choice-of-law question in resolving a motion to dismiss in a putative class action.  *See Argabright*, 201 F. Supp. 3d at 591 n.5 (collecting cases and explaining that "[b]ecause the parties have not briefed the issue, and because the choice[-]of[-]law analysis for contract or quasi-contract claims is generally 'a very fact-intensive inquiry' and the factual record is not full enough to make a choice[-]of[-]law determination, the Court will postpone the choice[-]of[-]law analysis to a later stage." (citations omitted)); *see also Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011) (declining to resolve the choice-of-law determination in deciding a motion to dismiss).  As the Third Circuit has observed, "the choice-of-law issues in nationwide class actions are rarely so uncomplicated that one can delineate clear winning and losing arguments at an early stage in the litigation."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 309 (3d Cir. 2011).  Therefore, like the courts in *Argabright* and *Snyder*, this Court will defer the choice-of-law analysis for the Nationwide Class's contractual claims and, for purposes of resolving the present Motion to Dismiss, will assume that Virginia law governs Plaintiff's contract claims.  *Argabright*, 201 F. Supp. 3d at 591 n.5 ("Since Plaintiffs have made their allegations under New Jersey law and both parties have briefed the sufficiency of the claims under New Jersey law, the Court will . . . apply New Jersey law to determine whether Plaintiffs have succeeded in stating plausible claims for relief."); *Snyder*, 792 F. Supp. 2d at 721 ("Since Plaintiffs have made their allegations under New Jersey law, the Court will apply New Jersey law for the purpose of examining Plaintiffs' claim under the Rule 12(b)(6) standard.").

Agreement which states, in bold typeface, "Your Liability for Unauthorized Electronic Funds Transfers." (*Id.* ¶ 42.)  That clause, which Plaintiff pulled verbatim from the Deposit Agreement, specifically defines the types of transfers that would be considered "unauthorized": (a) if "your account [is] accessed without your authority"; (b) if "your card, code, or password [is] lost or stolen"; (c) if "someone has transferred . . . money from your account without your permission"; and (d) if "an electronic funds transfer has been made without your permission." (*Id.*)  Further, the provision states "**[a]lso, if your statement shows transfers that you did not make or authorize, tell us AT ONCE**," and advises "[i]f you do not tell us within sixty (60) days after the statement was delivered to you of any unauthorized or fraudulent use of your account, you may not get back any of the money you lost after the sixty (60) days." (*Id.*) (emphasis in original).

According to the unambiguous terms of the Deposit Agreement, Defendant expressly limits its duties to "unauthorized" transactions and those that occurred as a result of "fraudulent use of [Plaintiff's] account." (D.E. 1-1 ¶ 43.  Plaintiff has alleged neither.  Instead, Plaintiff unsuccessfully attempts to stretch the meaning of the word "unauthorized." *See, e.g.,* D.E. 31 at 22 ("Plaintiff's utility scam transactions were not 'authorized payments.'  They were *un*authorized and the result of fraud." (emphasis in original)).  But Plaintiff has not claimed that someone hacked, took control, or otherwise accessed her Zelle account.  The Complaint alleges that she, in every sense of the word, *authorized* the four separate transaction.  Unfortunately for Plaintiff, the person on the other side of the Zelle transactions was not who they claimed to be.  Those transactions, however tragic they may be, were neither unauthorized nor the result of fraudulent *use of her Zelle account.*  In other words, Plaintiff has not alleged a "legally enforceable obligation" under the Deposit Agreement or any other source of law, and consequently Plaintiff has not alleged any breach thereof.

Because the parties have an agreement that expressly "create[d] valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." *Ward's Equip., Inc., v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997). "[The implied] covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Id.*; *see also Drummond Coal Sales, Inc. v. Norfolk S. Ry.*, 3 F.4th 605, 611–12 (4th Cir. 2021) ("[T]his duty [of good faith] does not permit us to write into the Agreement obligations that do not exist."). Moreover, "it does not relieve a party of the economic consequences of the terms to which it agreed." *Drummond Coal Sales, Inc.*, 3 F.4th at 612. As explained, Defendant followed the express and unambiguous terms of the Deposit Agreement. Plaintiff contends that Defendant "exploit[ed] undefined or ambiguous terms . . . any unauthorized or fraudulent use of your account . . . [and] set[] arbitrary and harmful meanings of those terms in bad faith." (D.E. 31 at 32–33.) In her Complaint, however, Plaintiff only mentions bad faith in conclusory fashion. For instance, Plaintiff claims that Defendant evaded "the spirit of the bargain and abus[ed] the power to specify terms constitute examples of bad faith in the performance of contracts," (D.E. ¶ 78), and that "[e]ach of Defendant's actions was done in bad faith and was arbitrary and capricious," (*id.* ¶ 81). Bare assertions of bad faith, standing alone, cannot survive a motion to dismiss, and therefore Plaintiff's implied covenant claim fails.

## IV.   CONCLUSION

For the reasons set forth above, the R&R of Magistrate Judge Kiel is REJECTED, Plaintiff's Motion to Remand is DENIED, and Defendant's Motion to Dismiss is GRANTED without prejudice. An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**

Orig:       Clerk
cc:         Edward S. Kiel, U.S.M.J.
            Parties