<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JACQUELINE WILKINS, *individually, and on behalf of all others similarly situated*, | Civil Action No: 22-2916 (SDW) (ESK) |
| Plaintiff, | **OPINION** |
| v. | |
| NAVY FEDERAL CREDIT UNION, | October 18, 2023 |
| Defendant. | |

**WIGENTON**, District Judge.

Before this Court is Defendant Navy Federal Credit Union's ("Defendant") Motion to Dismiss (D.E. 54 ("Motion")) Plaintiff Jacqueline Wilkins's ("Plaintiff") putative class action Amended Complaint (D.E. 52 ("FAC"))[1] for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332(d)(2). Venue is proper pursuant to 28 U.S.C. § 1391. This opinion is issued without oral argument pursuant to Rule 78. For the reasons discussed below, Defendant's Motion is **GRANTED** and the FAC is **DISMISSED WITH PREJUDICE**.

---

[1] Plaintiff brings this action individually and on behalf of two putative classes: (1) All persons who (a) maintained an account with Defendant and incurred losses due to fraud-induced transactions on Zelle, (b) alerted Defendant of the fraudulent transfer within 60 days, and (c) did not receive a reimbursement from Defendant ("Nationwide Class"); and (2) all New Jersey persons who maintained an account with Defendant and experienced similar unreimbursed losses due to fraud-induced transactions via Zelle ("New Jersey Subclass," and together with the Nationwide Class, "Classes"). (*Id.* ¶ 91.)

## I.  FACTUAL BACKGROUND

Plaintiff, a citizen of New Jersey, maintains a bank account with Defendant.  (D.E. 52 ¶¶ 8, 114.)  Defendant is a nationally chartered credit union with its principal place of business in Virginia, and it operates banking centers in the State of New Jersey.  (*Id.* ¶ 9.)

### A.  Plaintiff is Defrauded

On or about March 17, 2021, Plaintiff received an automated voicemail from someone purporting to be an agent at her utility company, PSE&G Electric ("PSE&G").  (*Id.* ¶¶ 83–84.) Unbeknownst to Plaintiff, PSE&G did not leave the automated voicemail—a fraudster did.  (*Id.* ¶¶ 84–87.)  The voicemail explained that Plaintiff's electric bill was overdue and that her service would be disconnected unless she made an immediate payment via Zelle.[2]  (*Id.* ¶ 84.)  Plaintiff, fearful that her power would be shut off because she had not paid her electric bill for months, promptly transferred via Zelle $998.01 to the account provided in the voicemail.  (*Id.*)  To ensure that her payment was processed, Plaintiff called the number from which she received the voicemail and spoke with individuals who again falsely identified themselves as agents at PSE&G ("Fraudsters").  (*Id.* ¶ 85.)  The Fraudsters claimed that they had not received any payment from Plaintiff and requested that she send the money again.  (*Id.*)  Because the Fraudsters reassured Plaintiff that she would be refunded any amount paid over her balance, Plaintiff transferred another $998.01 via Zelle.  (*Id.*)

Unsurprisingly, the Fraudsters—still misrepresenting themselves as agents of PSE&G— told Plaintiff that her second payment was unsuccessful and asked her to try again.  (*Id.* ¶ 86.)  This

---

[2] Zelle is a payment transfer service that was created by seven of American's largest banks: "Bank of America, Capital One, JPMorgan Chase, PNC, BB&T (now Truist), U.S. Bank[,] and Wells Fargo."  (*Id.* ¶ 12.)  It "is now America's most widely used money transfer service"—in 2021, the Zelle network recorded approximately 1.8 billion transactions worth $490 billion.  (*Id.* ¶¶ 12–13.)  Zelle is offered by 1,700 banks in the United States, including Defendant.  (*Id.* ¶ 16.)

time, the Fraudsters suggested that Plaintiff split the payment into two Zelle transfers—one for $450.29 and the other for $549.71.  (*Id.*)  Unfortunately, Plaintiff did so.  (*Id.*)  The next day, Plaintiff learned from PSE&G's customer service that she had been defrauded.  (*Id.* ¶ 87.)  Plaintiff immediately reported the fraud to Defendant, but Defendant refused to reimburse Plaintiff for the $2,996.02 she sent to the Fraudsters.  (*Id.* ¶¶ 88–90.)

### B.  Plaintiff's Allegations

According to the FAC, "[m]arketing for Zelle is jointly designed and promulgated by Zelle and member banks."  (*Id.* ¶ 33.)  Zelle, Plaintiff avers, "work[s] closely with banks and credit unions to give them materials and messaging to reach their customers."  (*Id.*)  This marketing tactic purportedly induces customers to sign up for Zelle by implicitly suggesting that the service is associated with their trusted banks.  (*Id.* ¶¶ 34, 37.)  Plaintiff insists that Defendant participated in this marketing campaign by promoting and embedding Zelle within its mobile app and website; making repeated promises of Zelle's safety and security; and concealing from customers both the "extreme" risks of using Zelle and Defendant's secret policy against reimbursing customers for their fraud-induced losses over Zelle.  (*Id.* ¶¶ 35–36, 43, 45–49, 73.)  The FAC further alleges that Defendant made "strong contract promises that Zelle transactions processed as debit card transactions [would] come with robust fraud and dispute resolution protections."  (*Id.* ¶ 52.)

### II.   <u>PROCEDURAL HISTORY</u>

On April 18, 2022, Plaintiff filed this putative class action in the Superior Court of New Jersey Law Division, Union County.  (*See generally* D.E. 1-1 ("Compl.") at 1–20.)  The original complaint brought claims under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8-1 *et seq.*, on behalf of only the New Jersey Subclass and for breach of contract on behalf of the Nationwide Class.  (Compl. ¶¶ 60–83.)  On May 18, 2022, Defendant timely removed the

action to this Court.  (D.E. 1.)  On June 8, 2022, Defendant moved pursuant to Rule 12(b)(6) to dismiss Plaintiff's claims.  (D.E. 7.)  In an Opinion and Order dated January 18, 2023, this Court, *inter alia*, granted Defendant's motion to dismiss and dismissed without prejudice Plaintiff's the original complaint.  (D.E. 49–50.)  On February 16, 2023, Plaintiff filed the FAC, again alleging that Defendant violated the NJCFA (Count 1) and breached its contractual duties (Count 2).  (D.E. 52 ¶¶ 100–23.)  One month later, on March 16, 2023, Defendant moved to dismiss the FAC (D.E. 54), and the parties timely completed briefing (D.E. 56–57).

## III.    <u>STANDARD OF REVIEW</u>

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (confirming that "Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an entitlement to relief").  In other words, Rule 8(a)(2) "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  In addition, a plaintiff alleging fraud by a defendant must meet the "stringent pleading restrictions of Rule 9(b)" by pleading with particularity "the circumstances constituting fraud or mistake."  *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting Fed. R. Civ. P. 9(b)).  To satisfy this heightened pleading standard, "the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation."  *Id.* (citing *Lum v. Bank of Am.*, 361 F.3d 2817, 224 (3d Cir. 2004)).

When considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (quoting *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–11 (3d Cir. 2009) (discussing the *Iqbal* standard). If "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] . . . that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678 (quoting Fed. R. Civ. P. 8(a)(2)).

## IV.   <u>DISCUSSION</u>

Defendant moves to dismiss all of Plaintiff's claims because, it contends, the FAC has not cured the deficiencies identified in this Court's January 18 Opinion dismissing the original complaint. Because the FAC still fails to state a claim under the NJCFA or arising out of the parties' contractual relations, Defendant's Motion will be granted.

### A.  Count 1:  Consumer Fraud[3]

---

[3] The parties again dispute which states' consumer fraud laws apply to the present dispute—New Jersey's NJCFA or Virginia's Consumer Protection Act ("VCPA"), Va. Code §§ 59.1-196–207. This Court again need not decide whether the VCPA or the NJCFA applies, because Plaintiff's consumer fraud claims, once again, fail under either regime. As an initial matter, Plaintiff has not—and indeed cannot—state a claim under the VCPA because "[b]anks, savings institutions, [and] credit unions," are specifically exempted therefrom. Va. Code § 59.1-199; *see, e.g.*, *McLean v. BB&T Bank Corp.*, No. 19-1413, 2020 WL 2744107, at *2 (E.D. Va. Jan. 13, 2020) (dismissing VCPA claim "because banks are excluded from the [VCPA]"); *Norman v. Wells Fargo Bank, N.A.*, No. 17-585, 2018 WL 1037048, at *5 (E.D. Va. Feb. 23, 2018) ("Institutions such as [Wells Fargo Bank] are specifically excluded from liability under the VCPA."). Under the NJCFA, Plaintiff's claims fare no better.

Plaintiff asserts that Defendant's marketing practices with respect to Zelle violated the NJCFA. Specifically, the FAC contends that Defendant's alleged statements about Zelle—that it is "safe," "secure," and "backed by the banks"—were false or misleading; that Defendant knew about and intentionally concealed the risks associated with Zelle; and that Defendant maintained a secret policy, *i.e.*, that it would never reimburse its customers for losses incurred by fraud over Zelle. (D.E. 52 ¶¶ 100–112.) Once again, the facts in the FAC fall short of Rule 9(b)'s heightened pleading standard and, in any event, do not amount to unlawful conduct under the NJCFA.

To state a claim under the NJCFA, a plaintiff must plead "1) unlawful conduct[4] by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *D'Agostino v. Maldonado*, 78 A.3d 527, 536–37 (N.J. 2013) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)); *see also Frederico*, 507 F.3d at 202 (citing *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462–65 (N.J. 1994)). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico*, 507 F.3d at 202 (quoting *Cox*, 647 A.2d at 462). A plaintiff alleging an affirmative act "need not prove that the defendant intended to commit an unlawful act," *Cox*, 647 A.2d at 462 (citing *Chattin v. Cape May Greene, Inc.*, 591 A.2d 943, 944 (N.J. 1991) (Stein, J., concurring)); however, if a plaintiff alleges "an omission, [he or she] must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud," *id.* The FAC

---

[4] The NJCFA defines "unlawful practice" as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deceptive, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise.

N.J. Stat. Ann. § 56:8-2.

claims that Defendant both made affirmative misrepresentations and knowingly concealed information.  This Court will evaluate the sufficiency of each claim in turn.

### 1.  Affirmative Misrepresentations

The FAC asserts that Defendant affirmatively—and falsely—advertised Zelle as safe, secure, and backed by the banks.  (D.E. 52 ¶¶ 2, 38, 43.)  As explained in this Court's January 18 Opinion, a plaintiff alleging fraud by a defendant must meet the "stringent pleading restrictions of Rule 9(b)." *Frederico*, 507 F.3d at 200; *Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 534 (D.N.J. 2011) ("It is well-established that NJCFA claims must meet the heightened pleading requirements of [Rule] 9(b)." (citing *Frederico*, 507 F.3d at 200)), which requires the "plaintiff [to] allege the 'who, what, when, where, and how' of the claim." *Crozier v. Johnson & Johnson Consumer Cos.*, 901 F. Supp. 2d 494, 506 (D.N.J. 2012) (quoting *Lum*, 361 F.3d at 224).

Here, as in the original complaint, the FAC is littered with "generic references to" Defendant's alleged marketing and its alleged statements made during the Zelle registration process. *Frederico*, 507 F.3d at 200.   Although Plaintiff now avers that the purported misrepresentations were made in Defendant's marketing materials, during the sign-up process, and on Defendant's mobile app and website, she utterly fails to state when and where *she* viewed them. (D.E. 52 ¶¶ 42–43.)  Instead, Plaintiff contends, in conclusory fashion, that she "recalls viewing . . . the[] statements prior to signing up for and using Zelle and understood them to refer to fraud and dispute resolution protection as existed with other . . . payment methods." (*Id.* ¶ 44.)  Such

bare allegations do not meet the heightened pleading standard of Rule 9(b).[5]  *See Lieberson*, 865 F. Supp. 2d at 539 (explaining that the plaintiff did not meet Rule 9(b)'s pleading standard because the complaint did not identify "when these statements were made or whether and when Plaintiff actually viewed them").

In any event, Plaintiff's case suffers from a fundamental flaw:  even if the FAC included the requisite detailed and nonconclusory allegations, the affirmative statements at issue do not amount to unlawful conduct under the NJCFA.  Plaintiff's NJCFA claims, though amended, remain largely the same—*i.e.*, Defendant misrepresented the safety and security of Zelle.  As explained in this Court's previous opinion, such statements "constitute[] puffery" and thus are not "actionable misrepresentation[s] under the NJCFA."  (D.E. 49 at 31–32.)  Furthermore, as in the original complaint, the FAC fails to set forth any nonconclusory allegations that Defendant's statements of Zelle's safety, security, and backing by the banks[6] were false.  As explained in this Court's January 18 Opinion, Defendant's representations about safety and security did "not suggest absolute safety," but rather "indicate[d] that the money transfer service, Zelle, [was] a safe and secure application for sending money."  (*Id.* at 33.)  Indeed, the statements in the FAC still suggest "that Zelle worked exactly as advertised:  [Plaintiff] transferred money quickly, safely, and securely from her bank account maintained with Defendant, unfortunately, to the Fraudsters." (*Id.*)  "Plaintiff has not alleged any facts to suggest that the integrity of Zelle's money transfer

---

[5] Although the FAC now references a specific advertisement—a 2018 commercial featuring Broadway performer, Daveed Diggs, rapping about Zelle's safety, security, and apparent backing by the banks—the FAC fails to attribute the commercial, and the statements made therein, to Defendant.  (*Id.* ¶ 38.)

[6] Even if the 2018 advertisement featuring Daveed Diggs were attributable to Defendant, Plaintiff does not—and cannot—allege that it was false.  As explained in a recent consumer fraud case in the Central District of California, "[t]o 'back' means to 'help or support mechanically, materially,' or 'to uphold, aid, second . . . with authority, money.'" *Sanchez v. Navy Fed. Cred. Union*, No. 23-285, 2023 WL 6370235, at *8 (C.D. Cal. Aug. 14, 2023) (quoting *Back*, THE OXFORD ENGLISH DICTIONARY (3d ed. 2004)).  "The statement is neither false nor misleading, as the allegations in the Complaint themselves reveal:  Zelle is 'backed by the banks' because it was 'created in 2017 by America's largest banks.'"  *Id.*  The same logic applies here.

process, itself, was unsafe or insecure." (*Id.*)  Accordingly, Plaintiff's claims based on purported misrepresentations are dismissed.

###### 2.  Omissions

Plaintiff's NJCFA claims based on omissions suffer the same fate.  Although courts will relax the stringent pleading requirements of Rule 9(b) where a plaintiff alleges that there are concealed facts within the exclusive control of a defendant, *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 285 (3d Cir. 1992) ("[C]ourts have relaxed the [particularity] rule when factual information is peculiarly within the defendant's knowledge or control." (second alteration in original) (quoting *In re Craftmatic Sec. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989))), boilerplate assertions "that the information 'lies within defendants' exclusive control,' will not suffice," *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 427 (D.N.J. 2005) (quoting *Shapiro*, 964 F.3d at 285).  Instead, "plaintiffs must accompany such an allegation with a statement of facts upon which the assertion is based," *id.* (quoting *Shapiro*, 964 F.2d at 285), and set forth "at least the nature and scope of plaintiff['s] effort to obtain, before filing the complaint, the information needed to plead with particularity," *Shapiro*, 964 F.2d at 285.  The FAC alleges neither, and therefore, Plaintiff's claims that Defendant maintained a secret policy will be dismissed.

The FAC further alleges that Defendant failed to disclose Zelle's extreme risks.  Because the FAC contains only conclusory and irrelevant assertions of Defendant's knowledge and intent, Plaintiff's NJCFA claims based on omissions must be dismissed.  *Cox*, 647 A.2d at 462 ("[W]hen the alleged consumer-fraud consists of an omission, the plaintiff must show that the defendant acted with knowledge, and intent *is* an essential element of the fraud.").  To be sure, Plaintiff has again offered mere conclusory assertions of Defendant's knowledge and intent.  (D.E. 52 ¶¶ 16, 18, 50, 103–04, 106.)  Although the FAC now quotes more statements from third parties—

including articles, a podcast, and other media—Plaintiff has failed to allege how those media relate to Defendant's knowledge of Zelle's risks and its intent to conceal them.[7]  As this Court noted in its January 18 Opinion, "[s]uch bare and irrelevant assertions . . . do not suffice to establish an intentional omission."  (*Id.* at 34.)

Further and more pointedly, Plaintiff's NJCFA claims based on Defendant's purported omissions are undermined by express disclosures in the Zelle Agreement.  Indeed, a closer look at the Zelle Agreement reveals that Defendant's secret policy—that it will not reimburse customers for *authorized* transactions—is not so secret after all.  It is, in fact, apparent from the face of the Zelle Agreement, which provides in relevant part:  "NEITHER WE NOR *ZELLE* GUARANTEES PROTECTION FOR AUTHORIZED PAYMENTS MADE THROUGH THE SERVICE."  (D.E. 52-1 at 11.)  The Zelle Agreement, moreover, expressly warns customers of Zelle's risks.  For instance, the Zelle Agreement states:  "**[ZELLE IS] INTENDED TO SEND MONEY TO FRIENDS, FAMILY, AND OTHERS YOU TRUST.  YOU SHOULD NOT USE [ZELLE] TO SEND MONEY TO RECIPIENTS WITH WHOM YOU ARE NOT FAMILIAR OR WHOM YOU DO NOT TRUST**"; "[Zelle] allows for the delivery of payments to Users through a Payment Network designed to deliver payments typically within minutes, although actual speed will vary"; and "You understand that when you send payments using [Zelle] you will have no ability to stop them."  (*See generally id.*)  In other words, Defendant, through the Zelle Agreement, explicitly informed Plaintiff of its reimbursement policy and the risks of using Zelle.  Plaintiff, then, cannot plausibly allege that Defendant intentionally concealed that which it had already disclosed to her.

---

[7] As in the original complaint, the FAC also offers statements by third parties (*see, e.g.*, *id.* ¶¶ 25, 27, 40) that "postdate[] Plaintiff's transactions," (D.E. 49 at 33).

In sum, Plaintiff cannot state a plausible claim under the NJCFA.  Therefore, Count 1 will be dismissed with prejudice.

## B.  Count 2:  Contractual Claims[8]

To state a claim for breach of contract, a plaintiff must allege "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Vlaming v. W. Point Sch. Bd.*, 10 F.4th 300, 307 (4th Cir. 2021) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).  Here, the FAC strings together terms from the Zelle Agreement and Debit Card Disclosure, contending that Defendant breached its obligations thereunder.  Plaintiff's allegations, however, are directly contradicted by unambiguous terms, and therefore, her breach-of-contract claims are denied.

First, Plaintiff does not—and cannot—identify a breach of the terms in the Zelle Agreement.  To be sure, the Zelle Agreement plainly and repeatedly warns users that Zelle should be used only "to send money to friends, family, and others you trust," and that Defendant does not

---

[8] Defendant contends—and Plaintiff does not dispute—that, pursuant to the choice-of-law provision in the Zelle Agreement, Virginia law governs the contractual claims.  (D.E. 57 at 11.)  As noted in this Court's January 18 Opinion:

> New Jersey courts typically "uphold the contractual choice" of the parties; however, "parties' freedom to choose the law applicable to their agreements is not without boundaries."  "New Jersey looks to Restatement § 187 to determine under what circumstances a choice-of-law clause will *not* be respected."  Restatement § 187 explains that a contractual choice-of-law provision will be followed "unless (a) the chosen state has no substantial relationship to the parties or the transaction, . . . or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state."

(D.E. 49 at 34–35 (citations omitted).)  Again, neither party suggests that application of the choice-of-law provision is violative of Restatement § 187.  As a result, this Court will follow the choice-of-law provision and apply Virginia law to Plaintiff's contract claims.  *See, e.g.*, *Folger v. Navy Fed. Cred. Union*, No. 22-198, 2022 WL 16709796, at *3 n.6 (D.N.J. Nov. 4, 2022) (enforcing the choice-of-law provision and applying Virginia law to contract claims because the parties did not "direct[ the court] to any relevant conflict between New Jersey law and Virginia law").

"guarantee the identity of any [Zelle] Users . . . including recipients to whom you send payments or those sending money to you." (D.E. 52-1 at 4, 11.) Crucially, the Zelle Agreement further elucidates that the customers, "NOT *ZELLE*, ARE PRIMARILY RESPONSIBLE FOR RESOLVING ANY PAYMENT OR OTHER DISPUTES THAT [THEY] HAVE WITH ANY OTHER ELIGIBLE PERSON TO WHOM [THEY] SEND MONEY, OR RECEIVE OR REQUEST MONEY FROM, USING THE ZELLE PAYMENT SERVICE.  NEITHER [DEFENDANT] NOR *ZELLE* GUARANTEES PROTECTION FOR AUTHORIZED PAYMENTS MADE THROUGH THE SERVICE." (*Id.* at 11.) As this Court has already explained, Plaintiff's March 17, 2021 transactions were "in every sense of the word, *authorized*." (D.E. 49 at 36.) Accordingly, Defendant had no obligation under the terms of the Zelle Agreement to reimburse Plaintiff for her transactions to the Fraudsters.

Second, Plaintiff contends that the Zelle Agreement's "Liability for Unauthorized Transfers" section expressly incorporates the "Zero Liability Policy for Fraud" ("Zero Liability Policy") contained in the Debit Card Disclosure.[9] Plaintiff's reliance on the Zero Liability Policy is misplaced. As the Zelle Agreement makes clear, the Zero Liability Policy applies only to "unauthorized *Zelle* payment[s]." (D.E. 52-1 at 8.) Plaintiff's payments to the Fraudsters were, of course, authorized and thus do not fall within the ambit of the Zero Liability Policy.[10]

---

[9] The Zero Liability Policy provides:

> In addition to the liability limits above, if you notify us of suspected fraud within 60 days of the statement date on which the fraudulent transactions first appear, we will not hold you responsible for confirmed fraudulent transactions. This Zero Liability policy only covers transactions that have been confirmed by Navy Federal as fraudulent.

(D.E. 52-2 at 3.)

[10] The parties dispute the extent to which the Zelle Agreement incorporates the terms of the Debit Card Disclosure. This Court finds that the Zelle Agreement's incorporation of the Debit Card Disclosure terms is limited—it

Third, Plaintiff seeks relief under the Debit Card Disclosure's provisions for "Billing Error Resolution" and "Other Reasons for Dispute."  (D.E. 52-2 at 3.)  The former, however, does not apply to authorized transactions[11], and the latter covers only transactions with merchants—not fraudsters.[12]  Accepting Plaintiff's preferred interpretations of these provisions would run afoul of a fundamental principle of contract interpretation, *i.e.*, that "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used the words needlessly."  *PMA Cap. Ins. Co. v. US Airways, Inc.*, 626 S.E.2d 369, 372–73 (Va. 2006) (quoting *D.C. McClain, Inc. v. Arlington Cnty.*, 452 S.E.2d 659, 662 (Va. 1995)).

---

incorporates only the terms of the Debit Card Disclosure "that apply to [the customer's] use of the Zelle and Other Payment Services and the portion of the Site through which the Zelle and Other Payment Services are offered."  (D.E. 52-1 at 3.)  Plaintiff insists that this Court should ignore that limitation and apply the Debit Card Disclosure's more general Zero Liability Policy.  Doing so would be contrary to the bedrock principle of contract interpretation that "where there are two clauses in any respect conflicting, that which is specially directed to a particular matter controls in respect thereto over one which is general in its terms."  *Mut. Life Ins. Co. v. Hill*, 193 U.S. 551, 558 (1904).  In other words, "a specific provision of a contract governs over one that is more general in nature."  *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 170 (Va. 2011).

[11] As set forth in the Debit Card Disclosure, "[t]he Billing Error Resolution process covers the following errors: unauthorized transactions, including invalid amounts, duplicate transactions, transactions that were paid for by other means, and cancelled recurring payments; expected credit not received; and non-receipt of ATM funds or POS cash-back."  (D.E. 52-2 at 3.)

[12] To be sure, the Other Reasons for Dispute provision provides:

> Disputed transactions that are not covered by our Error Resolution Process such as defective, damaged, or non-receipt of merchandise or services, or items received "not as described" will be handled at our discretion.  Please first make a good faith attempt to resolve discrepancies *with the merchant*.  If your good faith attempt is not successful, we may use our dispute resolution process to act on your behalf and pursue recovery of funds *from the merchant*, based on your statement supporting your claim, as well as any documentation we may request.  We may not be able to recover your funds.  We will report the results of the dispute resolution process to you within 120 days; however, we are not obligated to issue a Provisional Credit during the dispute resolution process.

(*Id.* (emphasis added).)  In any event, this provision cannot apply to Zelle transactions; it covers "defective, damaged, or non-receipt of merchandise or services, or items received 'not as described,'" (*id.*), which directly conflicts with the Zelle Agreement's unequivocal waiver of liability where "[the customer] do[es] not receive the goods or services for which [they] paid, or the goods or services that [they] received are damaged or otherwise not what [they] expected," (D.E. 52-1 at 11).  As this Court has explained, where specific and general terms conflict, the more specific terms— here, the Zelle Agreement—govern.

Finally, the FAC fails to state a claim for breach of the implied covenant of good faith and fair dealing. The FAC avers that Defendant breached this implied covenant "when it failed to fairly investigat[e] reported erroneous and fraudulent transactions on [Zelle] and failed to reimburse accountholders for fraud losses incurred on debit-card linked Zelle transactions." (D.E. 52 ¶ 120.) At bottom, Plaintiff contends that Defendant abused its "discretion conferred by . . . contract." (*Id.* ¶ 117; D.E. 52-2 at 3.) Although a claim for breach of the implied covenant of good faith and fair dealing may lie where a defendant exercises "contractual *discretion* in bad faith," *Va. Vermiculite, Ltd. v. W.R. Grace & Co.-Ct.*, 156 F.3d 535, 542 (4th Cir. 1998), the FAC contains only conclusory allegations of bad faith, which, "standing alone, cannot survive a motion to dismiss," (D.E. 49 at 37). Moreover, this Court has already concluded as a matter of law that Defendant expressly disclaimed liability for authorized transactions, and that none of the discretionary provisions cited by Plaintiff apply here. Plaintiff cannot now invoke the implied covenant of good faith and fair dealing as a "vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equip., Inc. v. New Holland N. Am., Inc.*, 493 S.E.2d 516, 520 (Va. 1997); *Riggs Nat. Bank of Washington, D.C. v. Linch*, 36 F.3d 370, 373 (4th Cir. 1994) ("An implied duty of good faith cannot be used to override or modify explicit contractual terms.").[13]

---

[13] Plaintiff also asserts that Defendant, "like all banks and credit unions, offers a robust . . . 'chargeback' process," by which customers can report fraud and, in turn, the bank will "pull[] funds from the merchant's account, and return[] them to the cardholder's account, or otherwise refund[] the accountholder." (D.E. 52 ¶ 65.) Plaintiff similarly contends, on information and belief, that Defendant "automatically issues provisional credits and affirms those provisional credits to virtually all debit card transactions disputed by accountholders." (*Id.* ¶ 72.) Not only are these alleged obligations absent from the Zelle Agreement and Debit Card Disclosure, but also they are in direct conflict with the terms of those agreements. As explained, the "implied duty of good faith cannot be used to override or modify explicit contractual terms." *Linch*, 36 F.3d at 373.

Plaintiff has failed to state a claim sounding in contract, and therefore, Count 2 will be dismissed with prejudice.

**V.**     **CONCLUSION**

For the reasons set forth above, Defendant's Motion is **GRANTED** and the FAC is **DISMISSED WITH PREJUDICE**.  An appropriate order follows.

_____/s/ Susan D. Wigenton_____
**SUSAN D. WIGENTON, U.S.D.J.**


Orig:          Clerk
cc:            Edward S. Kiel, U.S.M.J.
               Parties

15